Thomas H. DANIELS,
Plaintiff-Appellant,

v.

ALL STEEL EQUIPMENT, INC., Stationers, Inc., J. H. Hartman, R. W. Sprott, Speedy Moore, and Harry Licata, Defendants-Appellees.

No. 77–2132.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1979.

Lionel M. Schooler, Houston, Tex., for plaintiff-appellant.

Lee N. Abrams, Alan N. Salpeter, Chicago, Ill., Robert H. Singleton, Houston, Tex., for All Steel Equipment, Inc.

Lewis F. Pennock, Houston, Tex., for Speedy Moore.

William L. Bowers, Jr., Houston, Tex., for W. C. Moore.

B. J. Bradshaw, Richard N. Carrell, Houston, Tex., for Stationers, Inc. and Harry Licata.

Before INGRAHAM, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

The appellant, Thomas Daniels, is suing All Steel Equipment, Inc. ["All Steel"] and Stationers, Inc. ["Stationers"] and their officers and principals for violations of the Sherman and Clayton Acts. He also presents several pendent state law claims. The trial court granted summary judgment in favor of all defendants with respect to the federal antitrust claims and dismissed with prejudice the remaining claims.

Appellee All Steel is a manufacturer of steel office furniture. All Steel markets its products through independent sales representatives who service customers and promote sales through full-line dealers and other distributors. A full-line dealer is a distributor authorized by All Steel to offer for sale all of All Steel's office furniture. Oth-er distributors may sell only selected items from the All Steel product line. A sales representative derives his income from commissions paid to him by All Steel on sales by dealers and distributors within his territory. Sales representatives engage in no direct selling.

Appellant Thomas Daniels was an All Steel sales representative. His sales territory comprised roughly the geographical lower one-half of Texas, including Houston. Prior to 1974, appellee Stationers was the sole full-line All Steel dealer in Houston. In 1974 Daniels helped to establish Josco, Inc. ["Josco"] as the second such dealer in the Houston area. Daniels complains that Stationers influenced All Steel to terminate his contract in retaliation for his introduction of competition (Josco) into the Houston market for All Steel products.[1] Josco is not a party to this suit. Josco continues to compete with Stationers as a full-line dealer in All Steel products.

After analyzing both the questions of the proper antitrust standard and whether or not summary judgment was appropriate, we affirm.

I.

Appellant Daniels' ship struck the shoals when the trial judge analogized his case to the dealer termination cases. In an effort to complete the voyage, Daniels has launched his lifeboat. This, however, does not weaken the shore's grip on Daniels' dauntless dinghy. Daniels' case is not a dealer termination case. See, e. g., H & B Equipment Co., Inc. v. International Harvester Co., 577 F.2d 239 (5th Cir. 1978); Northwest Power Products, Inc. v. Omark Industries, Inc., 576 F.2d 83 (5th Cir. 1978); Kestenbaum v. Falstaff Brewing Corp., 575 F.2d 564 (5th Cir. 1978); Burdett Sound, Inc. v. Altec Corp., 515 F.2d 1245 (5th Cir. 1975). However, we view this case as weaker than, although analogous to, the dealer termination cases. We therefore,

---

1. We note that Daniels' contract with All Steel permits termination "by either party by written notice of termination delivered to the other party not less than thirty days before the termination date." Daniels does not contend that All Steel violated this provision.

look to those cases for the standard against which to test the propriety of summary judgment.

In *Burdett*, a pre-*Continental T.V.*[2] case, we held "that it is simply not an antitrust violation for a manufacturer to contract with a new distributor, and as a consequence, to terminate his relationship with a former distributor, even if the effect is to seriously damage the former distributor's business." 515 F.2d at 1249. An antitrust violation only occurs if the termination produces an "unreasonable restraint of trade." *Id.* at 1248. *Continental T.V.* teaches that market considerations provide the "objective benchmarks" for distinguishing antitrust violations. 433 U.S. at 53 n.21, 97 S.Ct. 2549. Accordingly, we held in *H & B Equipment* that the mere intent to eliminate a distributor does not establish a cause of action for violation of the antitrust laws. Likewise, we held in *Northwest Power Products* that the use of otherwise unfair competition in the elimination and replacement of a distributor does not, in itself, violate the rule of reason.

" "The first step in establishing an unreasonable restraint of trade is to show anticompetitive effect, either in the intrabrand or interbrand markets." 577 F.2d at 246. The Supreme Court in *Continental T.V.* recognized that a reduction in intrabrand competition is not pernicious as long as there exists interbrand competition, which acts as a "significant check on the exploitation of intrabrand market power because of the ability of consumers to substitute a different brand of the same product." 433 U.S. at 53 n.19, 97 S.Ct. at 2559. Applying this reasoning in *H & B Equipment, Northwest Power Products*, and *Kestenbaum*, we required a showing of adverse market impact even though the defendants may have engaged in questionable business practices and a competitor was eliminated. We could hardly require more where, as here, the alleged misdeeds were less culpable and where no competitor was eliminated.

## II.

Daniels' only possible claims to adverse market impact are in the area of intrabrand competition. He contends that, although he himself was not a competitor either to All Steel or to Stationers, he should not be punished for trying to enhance All Steel's competitive position by providing competition to Stationers in the sale of All Steel products in Houston. Furthermore, Daniels seems to argue that, if he is eliminated, the intrabrand market loses a font of future competitors. However, these thin reeds of argument were cut by the appellees' motion for summary judgment.

Summary judgment was properly granted in this instance. First, Daniels in his deposition admitted that there was vigorous interbrand competition in the sale of office furniture in the Houston area. Furthermore, Daniels' position and function within the All Steel distribution scheme has not been eliminated. All Steel has simply substituted another individual for Daniels. Daniels testified in his deposition that since his commissions were based on the sales of the dealers in his territory, he had an incentive to stimulate competition among the various All Steel dealers so that each dealer would actively sell the products. We can see no reason, and Daniels offered none in opposition to the motion for summary judgment, why Daniels' replacement would not be subject to the same incentives and consequently why he would not promote intrabrand competition just as vigorously. Finally, Josco, the competitor whose introduction to an All Steel dealership by Daniels allegedly led to Daniels' termination, continued to provide intrabrand competition to Stationers.[3]

---

**2.** *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).

**3.** At oral argument, Daniels' counsel pointed to his lack of knowledge of whether or not Josco continued to be an All Steel dealer as indicative that summary judgment was premature and that the court should have allowed further discovery. We might remind counsel that Rule 56(f) provides a mechanism whereby he may have obtained any facts necessary to oppose the motion. "Diligence in opposing a motion for summary judgment is required, for such a

Daniels failed entirely to respond to the motion for summary judgment. He presented neither argument nor evidence to bolster his theory that his elimination created even a ripple in the competitive milieu in the Houston area. Although we are ordinarily reluctant to approve of summary judgment in the antitrust area, *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), we affirm without hesitation the granting of summary judgment where the nonmoving party makes no effort to fill the holes left in his case by the opposing party's motion. Accordingly, the dinghy must go down along with the ship.[4]

### III.

As a final matter, we reverse the dismissal with prejudice of Daniels' state claims. Having dismissed the claims supporting federal jurisdiction, the trial court properly dismissed the pendent claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since the pendent causes of action were not the subject of the motion for summary judgment, however, they should have been dismissed without prejudice to their disposition in state court.

AFFIRMED in part and REVERSED in part.

---

motion with supporting logistics and gear does not lose its thrust by an opponent's complacence," *Southern Rambler Sales, Inc. v. American Motors Corp.,* 375 F.2d 932, 937 (5th Cir. 1967).

**4.** As Judge Goldberg piquantly stated, "Meet these affidavit facts or judicially die." *Id.*