TIM W. KOERNER & ASSOCIATES, INC., et al., Plaintiff,

v.

ASPEN LABS, INC., Zimmer U.S.A., Inc. and Bristol-Myers Company, Defendants.

Civ. A. No. H–77–1597.

United States District Court, S. D. Texas, Houston Division.

June 12, 1980.

Louis R. Koerner, Jr., New Orleans, and John A. Graml, Houston, Tex., for plaintiff.

Fulbright & Jaworski, William R. Pakalka, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

STERLING, District Judge.

Pending before the Court are Defendants' motion for summary judgment, Plaintiff Tim Koerner and Associates, Inc.'s motion to compel discovery, Plaintiffs' motion to transfer pursuant to 28 U.S.C. §§ 1404 and 1407, and Plaintiffs' motion to stay briefing for and consideration of the motion for summary judgment.

This is a private antitrust action in which Plaintiffs, who have engaged in the business of distributing and selling orthopedic and electrosurgical supplies, allege that Defendants have violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, section 2(a), (c) and (e) of the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13(a), (c) and (e), and sections 3 and 7 of the Clayton Act, 15 U.S.C. §§ 14 and 18. Additionally, Plaintiffs invoke the pendent jurisdiction of the Court to recover actual and punitive damages from Defendants for alleged violations of Texas and Louisiana contractual and antitrust law.

With regard to the federal antitrust claims, Plaintiffs have alleged in their amended complaint that Bristol-Myers Company [hereinafter Bristol-Myers], its wholly owned subsidiary Zimmer, U.S.A., Inc. [hereinafter Zimmer] and Aspen Labs, Inc. [hereinafter Aspen] have combined, contracted and conspired unreasonably to restrain interstate trade and commerce; to dominate and monopolize interstate commerce in the furnishing of orthopedic products; to discriminate, in the furnishing of services and facilities connected with sales, between different distributors of said commodities; to enter into illegal tying arrangements. Plaintiffs further allege that the acquisition by Defendant Zimmer of Aspen substantially lessened competition and tended to and did in fact create a monopoly in favor of Defendants in the sale of orthopedic and electrosurgical products.

Defendant, Aspen, is a manufacturer of electrosurgical products for use in an operating room environment. Plaintiff, Tim Koerner and Associates, Inc., became a distributor and representative for Aspen in January, 1976. There was never a written contract between Aspen and Tim Koerner and Associates, Inc. Tim Koerner, doing business as DePuy-Koener, has been a distributor of orthopedic and other products for DePuy, a division of Manheim Boerhinger, since June, 1974. Defendant, Zimmer, a wholly owned subsidiary of Bristol-Myers Company, manufactures and distributes a line of orthopedic products. DePuy is a competitor of Zimmer in the orthopedic products market.

On May 9, 1977, after extensive negotiations Zimmer purchased all of Aspen's outstanding common stock. Originally, Aspen had entered into negotiations with Zimmer to secure Zimmer as a distributor for Aspen products. The dialogue concerning a Zimmer distributorship quickly matured into a proposal by Zimmer to acquire Aspen. On or about August 31, 1977, Plaintiff, Tim Koerner and Associates, Inc., was notified that its distributorship for Aspen products would be terminated on September 30, 1977. All of Plaintiffs' claims stem from Zimmer's post acquisition decision to terminate Aspen's independent network of distributors and replace it with Zimmer's distribution system.

█ Before considering Defendants' motion for summary judgment, the Court will dispose of the several pending motions. Plaintiff, Tim Koerner and Associates, Inc.'s motion to compel production of documents was filed nine months after Defendant, Bristol-Myers' responses to Plaintiff's third request for production of documents and almost two months after Defendants' motion for summary judgment. Having considered the motion and examined the record the Court is of the opinion that the record has been fully developed and that this cause is ripe for summary judgment. Moreover, the Court is of the opinion that

Plaintiff has been inexcusably dilatory in its efforts to pursue an order to compel discovery. While there is no specific time limit under Rule 37, Fed.R.Civ.P., in which procedures to compel discovery must be undertaken, the courts have determined that "unreasonable delay can result in a waiver of a party's right to avail himself of the rule." *Price v. Maryland Casualty Co.*, 561 F.2d 609, 611 (5th Cir. 1977); *see, Aviation Specialties, Inc. v. Technologies Corp.*, 568 F.2d 1186, 1188–90 (5th Cir. 1978). Furthermore, Plaintiffs did not make a motion pursuant to Rule 56(f), Fed.R.Civ.P., to obtain information necessary to oppose the motion for summary judgment. *See, Daniels v. All Steel Equipment, Inc.*, 590 F.2d 111, 113 n.3 (5th Cir. 1979). In light of the above the Court is of the opinion that Plaintiff, Tim Koerner and Associates, Inc.'s motion to compel production of documents must be DENIED.

■ Subsequent to Defendants filing their motion for summary judgment, Plaintiffs filed their motion to transfer this cause to the United States District Court for the Southern District of Colorado pursuant to 28 U.S.C. §§ 1404(a) and 1407. Under 28 U.S.C. § 1407 a party can only initiate proceedings for transfer of an action by filing a motion with the judicial panel on multistate litigation and by filing a copy of such motion with the district court in which the action is pending. The record discloses that Plaintiff has not conformed with this procedure. Therefore, the Court will only address Plaintiffs' motion to transfer under § 1404(a).

■ A motion to transfer under 28 U.S.C. § 1404(a) is committed to the sound discretion of the district court. *See, Pilot Life Insurance Co. v. Boone*, 236 F.2d 457, 462 (5th Cir. 1956); 1 Moore's Federal Practice ¶ 0.145[5], at 1619 (2d ed. 1979). The instant action was filed over two years ago and there has been extensive and complete discovery. The Court is thoroughly familiar with this cause and is persuaded that in the interest of justice and to avoid undue delay and prejudice the motion to transfer must be DENIED. Accordingly, Plaintiffs'

motion to stay the briefing schedule and consideration of Defendants' motion for summary judgment pending a decision on Plaintiffs' motion to transfer is moot.

■ Generally, summary judgments are not favored in complex antitrust litigation. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 468, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). However, the mere filing of an antitrust complaint does not prevent summary judgment where appropriate. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *see, Aladdin Oil Co v. Texaco, Inc.*, 603 F.2d 1107, 1111 (5th Cir. 1979). Summary judgment under Rule 56 is appropriate where the movant has carried its burden of showing that no genuine issue of material fact exists and the nonmovant has failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e), *see, First National Bank v. Cities Service Co., supra*, 391 U.S. at 288–90, 88 S.Ct. at 1592–1593; *Aladdin Oil Co. v. Texaco, Inc., supra*, at 1112. Once allegations of antitrust violations have been rebutted by the movant, the nonmovant must produce significant probative evidence demonstrating the existence of a genuine issue of material fact if summary judgment is to be avoided. *See, Aviation Specialties, Inc. v. United Technologies Corp., supra*, at 1192; *Solomon v. Houston Corrugated Box Co.*, 526 F.2d 389, 394 (5th Cir. 1976). In determining the existence of a material fact issue, the record as a whole and the factual inferences must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## I.

### Plaintiffs' Claims Under the Robinson-Patman and Clayton Acts

Although Plaintiffs' first amended complaint presents a superfluity of antitrust verbiage and allegations, Plaintiffs' claims under the Robinson-Patman Act and section 3 of the Clayton Act can be disposed of

briefly as the record discloses that these claims are without merit. Defendants having rebutted Plaintiffs' allegations of Robinson-Patman Act and Clayton Act violations, Plaintiffs were required to come forward with evidence showing that there is a material fact issue for trial. Plaintiffs have conceded that there is no evidence of violations of sections 2(a) and (c) of the Robinson-Patman Act. *See*, Plaintiffs' Response to Defendants' Reply Brief at 20 [hereinafter Plaintiffs' Response]. However, Plaintiffs still maintain that Defendants violated section 2(e) of the Robinson-Patman Act by their post-termination failure and refusal to provide the same assistance to Plaintiff, Tim Koerner and Associates, Inc., that was provided to Zimmer distributors.

■■ Pursuant to section 2(e) it is an unlawful practice to discriminate in favor of one purchaser against another purchaser of a commodity in the furnishing of services or facilities connected with the sale of such commodity. 15 U.S.C. § 13(e). The purpose of section 2(e) is to protect "competing customers or purchasers" so that all buyers of the supplier who compete in the resale of its product are entitled to promotional and other services on proportionally equal terms. *Becker v. Safelite Glass Corp.*, 244 F.Supp. 625, 635–36 (D.Kan.1965); *see, Bay City Abrahams Bros., Inc. v. Estee Lauder, Inc.*, 375 F.Supp. 1206, 1217–19 (S.D.N.Y. 1974). In order to recover under section 2(e) a plaintiff must be a customer in competition with the favored customer. *Becker v. Safelite Glass Corp., supra*, at 636.

■ Plaintiff in the cause at bar maintains that, post-termination, Zimmer's sales representatives were favored customers or purchasers. It is uncontroverted that both Zimmer and Aspen, post-termination, sold their products through Zimmer's sales force of commissioned sales representatives. Moreover, Zimmer has no dealers, distributors or sales representatives who buy Zimmer or Aspen goods, take title to them and resell them. Defendants Aspen and Zimmer sell only to hospitals, doctors and other end users who are not in competition with Plaintiffs. Clearly, under the plain language of section 2(e) Zimmer's sales representatives are not purchasers in competition with Plaintiff, Tim Koerner and Associates, Inc. Accordingly, the Court is of the opinion that Defendants' motion for summary judgment as to Plaintiffs' claims under sections 2(a), (c) and (e) of the Robinson-Patman Act must be granted.

■ Section 3 of the Clayton Act, by its express terms, makes it unlawful to enter into tying arrangements, whereby goods are sold on the condition or understanding that the purchaser will not use or deal in the goods of a competitor of the seller, where the effect may be to lessen competition or tend to create a monopoly. 15 U.S.C. § 14. With regard to violations of section 3, Plaintiffs' first amended complaint alleges in conclusory fashion that: "Defendants have entered into contracts . . . with regard to Aspen products in an attempt to foreclose purchasers and users of such products from dealing with Plaintiffs . . . in violation of section 3 of the Clayton Act, 15 U.S.C. § 14." *See*, First Amended Complaint at ¶ 45. Plaintiffs now maintain that an illegal tying arrangement occurred when Tim Koerner and Associates, Inc. was terminated as an Aspen dealer allegedly because it was not a dealer in Zimmer products as well. Plaintiffs totally misapprehend the nature of "tying" arrangements. *See*, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, Part II, at 87 [hereinafter Plaintiffs' Opposition]. Plaintiffs have conceded that they have no clear evidence of even any attempted tying arrangements and they have not come forward with any alleged evidence of Defendants' having entered into tying arrangements with anyone. *See*, Plaintiffs' Response at 21. In the absence of a forbidden tying arrangement a manufacturer is not precluded by the Act from refusing to deal with anyone. *Dillon Materials Handling, Inc. v. Albion Industries*, 567 F.2d 1299, 1306 (5th Cir.), *cert. denied*, 439 U.S. 832, 99 S.Ct. 111, 58 L.Ed.2d 127 (1978); *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 915 (5th

**300**

Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

■ In pertinent part section 7 of the Clayton Act, 15 U.S.C. § 18, provides:

"No corporation engaged in commerce shall acquire, directly or indirectly the whole or any part of the stock or other share capital . . . of another corporation . . . where in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

Plaintiffs allege that Zimmer's acquisition of Aspen lessened competition and tended to and did create "a monopoly in favor of Defendants in the sale of orthopedic products, disposable products and other products for use in an operating room environment." First Amended Complaint ¶ 46. Plaintiffs seek treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, and divestiture under section 16 of the Act, 15 U.S.C. § 26. By its express terms section 7 of the Clayton Act is directed only against the acquiring corporation. *Dailey v. Quality School Plan, Inc.,* 380 F.2d 484, 488 (5th Cir. 1967). Consequently, Plaintiffs can not state a claim under section 7 against Aspen or Bristol-Myers.

■ Defendants challenge Plaintiffs' standing under section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to maintain their section 7 claim. Both parties rely on the "target area" test for standing set forth by the Fifth Circuit in *Dailey v. Quality School Plan, Inc., supra,* at 487–88. However, the "target area" test of standing, to maintain an action under the Clayton Act, applies only to claims under section 4 and not to suits for injunctive relief under section 16. *Universal Brands, Inc. v. Philip Morris, Inc.,* 546 F.2d 30, 34 (5th Cir. 1977).

■ Under the "target area" test a plaintiff must be: (1) "injured in his business or property by reason of anything forbidden ·in the antitrust laws," 15 U.S.C. § 15; (2) one against whom the antitrust violation is directed, i. e., he must be within the sector of the economy which is threat-ened by a breakdown of competitive conditions in a particular industry; and (3) proximately injured by the asserted conduct. *See, Jeffrey v. Southwestern Bell,* 518 F.2d 1129, 1131 (5th Cir. 1975); *Dailey v. Quality School Plan, Inc., supra,* at 487. When damage to a plaintiff is merely subordinate, incidental or indirect, or if the alleged antitrust acts are so removed from the injury as to be only distantly causative, the plaintiff has not been proximately injured "by reason of anything forbidden in the antitrust laws as contemplated by the Clayton Act." *Dailey v. Quality School Plan, Inc., supra,* at 487; *see, Universal Brands, Inc. v. Philip Morris, Inc., supra,* at 34.

■ Without direct reference to the "target area" test or proximate cause the Supreme Court in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) stated:

"We therefore hold that for plaintiffs to recover treble damages they must prove more than an injury causally linked to an illegal presence in the market. Plaintiffs must prove antitrust injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violations or of the anticompetitive acts made possible by the violation. It should in short be 'the type of loss that the claimed violations . . . would be likely to cause.'" *Zenith Radio Corp. v. Hazeltone Research,* 395 U.S. [100] at 125 [89 S.Ct. 1562 at 1577, 23 L.Ed.2d 129].

Thus, a section 4 plaintiff must establish "antitrust injury" which is the type of injury intended to be prevented by the particular antitrust provision relied upon. Moreover, the injury must be a direct result of the defendant's illegal conduct.

■ To achieve standing under section 16, a plaintiff is not required to show injury to his business or property. *Universal Brands, Inc. v. Philip Morris, Inc., supra,* at 34; *Jeffrey v. Southwestern Bell, supra,* at 1132. The pivotal issue for standing under section 16 is proximate cause. The Plain-

tiff must demonstrate that he is threatened with loss or injury proximately resulting from the antitrust violation. Id. The analysis of proximate cause under section 4, as set forth above, is also applicable to section 16.

The undisputed facts of this case are: that the Plaintiff, Tim Koerner and Associates, Inc. was a distributor and representative for Aspen for almost two years; that the corporate Plaintiff never distributed orthopedic products; that despite allegations to the contrary the corporate Plaintiff never had an enforceable contract with Aspen (as will be shown hereafter); that Aspen was acquired by Zimmer and Aspen's distributors were replaced by Zimmer's salesmen; and that Plaintiff Tim Koerner, doing business as DePuy-Koerner, was a distributor of DePuy products and never distributed Zimmer or Aspen products.

Plaintiff, Tim Koerner and Associates, Inc.'s injury is based upon the business lost when it could no longer sell Aspen products. Plaintiff, Tim Koerner, was allegedly injured by the loss of Aspen products as an "in-road" for the sale of DePuy orthopedic products and as a result of injury to DePuy's business.

Neither of the parties has attempted to clearly define the "target area" of the alleged unlawful acquisition. Plaintiffs' amended complaint alleges that competition has been threatened and monopoly established in the sale of orthopedic products, electrosurgical products and related products for use in the operating room. By defining the "target area" as the manufacture and sale of orthopedic and surgical products, all of the products in Plaintiffs' complaint are thereby encompassed. Moreover, both of the Plaintiffs will be found in the "target area" as defined. It can be conceded that Plaintiffs have received an injury in their property and business which occurred within the "target area" of the economy.

However, it is evident that the termination of Plaintiff, Tim Koerner and Associates, Inc.'s Aspen distributorship and the resulting loss of business to the corporate entity and to Tim Koerner as a DePuy representative was not directly or proximately caused by the challenged acquisition. Further, any injury that Tim Koerner received as a result of injury to DePuy was indirect and incidental. While Plaintiffs' injuries may have "occurred 'by reason of' the unlawful acquisitions, it did not occur 'by reason of' that which made the acquisitions unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., supra,* 429 U.S. at 488, 97 S.Ct. at 697. *See, Universal Brands, Inc. v. Philip Morris, Inc., supra,* at 34. The Ninth Circuit in a similar section 7 dealer termination case stated:

"The terminations were an incidental matter which the merger may have made possible, but certainly did not cause. All Lenore really alleges is that because Olympia purchased the Hamm's brand, Lenore was replaced in favor of other distributors. This is insufficient to make out a case under § 7 which is concerned with competition, not competitors. [*John Lenore & Co. v. Olympia Brewing Co.,* 550 F.2d 495, 500 (9th Cir. 1977)]".

In light of the above the Court is of the opinion that Defendants' motion for summary judgment as to Plaintiffs' claims under sections 3 and 7 of the Clayton Act must be granted.

## II.

### Plaintiffs' Sherman Act Claims

Plaintiffs, in conclusory fashion, have alleged that Defendants have conspired, combined and contracted between themselves and with others in unreasonable restraint of interstate commerce and trade in orthopedic and related products, and in order to dominate and monopolize commerce in such products, in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. *See,* First Amended Complaint at ¶ 31. Additionally, Plaintiffs have alleged a host of ancillary restraints. Among these are: (1) an attempt to achieve market dominance, (2) an attempt to obtain a monopoly, (3) tying arrangements, (4) concerted refusals to deal, (5) exclusive dealings and (6) price fixing. Id. ¶¶ 32–36.

■ It is settled law that a manufacturer has the right to select its customers and may refuse to sell its goods to anyone for reasons sufficient to itself. *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Burdett Sound, Inc. v. Altec Corporation,* 515 F.2d 1245, 1246 (5th Cir. 1975). Under sections 1 and 2 a mere refusal to deal without an unreasonable restraint is not a *per se* violation. *Universal Brands v. Philip Morris, Inc., supra,* at 33; *Solomon v. Houston Corrugated Box Co., supra,* at 397; *Burdett Sound, Inc. v. Altec Corp., supra,* at 1248. It is not an antitrust violation for a manufacturer to alter his distribution system and negotiate a change from one distributor to another "even if the effect of the new contract is to seriously damage the former distributors business." *Burdett Sound, Inc. v. Altec Corp., supra,* at 1249.

Defendants have completely rebutted Plaintiffs' allegations under sections 1 and 2 of the Sherman Act and Plaintiffs' allegations of unreasonable restraints. The burden has shifted to Plaintiffs to produce significant probative evidence of the existence of a material fact issue with regard to their Sherman Act allegations, and this they have failed to do. *See, First National Bank v. Cities Service Co., supra,* 391 U.S. at 291, 88 S.Ct. at 1593–1594; *Solomon v. Houston Corrugated Box Co., supra,* at 396.

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, makes unlawful combination, contracts and conspiracies in restraint of trade. A claim under section 1 requires a showing that a conspiracy or combination existed and that it unreasonably restrained trade. *Aviation Specialties, Inc. v. United Technologies Corp., supra,* at 1191. Plaintiffs have adduced no significant probative evidence of the existence of the alleged conspiracy or agreement. In the absence of such evidence, summary judgment is proper when an inference of no conspiracy is more probable than the asserted inference of a conspiracy. *First National Bank v. Cities Service Co., supra,* 391 U.S. at 280, 88 S.Ct. at 1588; *Aviation Specialties, Inc. v. United Technologies Corp., supra,* at 1186. More-

over, all evidence indicates that there has been no adverse market impact in the area of interbrand competition in orthopedic or electrosurgical products. Plaintiff, Tim Koerner and Associates, Inc.'s place in the Aspen distribution system has been taken by several Zimmer sales representatives, thereby increasing intraband competition in Aspen products. Plaintiffs have conceded that the orthopedic products market is even more competitive than it was prior to the acquisition. Koerner Deposition at 271.

■ Plaintiffs allege that Defendants violated section 2 of the Sherman Act by attempting to acquire a monopoly in furnishing orthopedic and related products for the operating room environment and by actually acquiring such a monopoly. Under section 2 the offense of monopoly requires a showing that the defendant is possessed of monopoly power in the relevant market and has willfully acquired or maintained that power. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966); *Spectrofuge Corp. v. Beckman Instruments, Inc.,* 575 F.2d 256, 275 (5th Cir. 1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). Monopoly power is the power to exclude competition or fix prices. *Spectrofuge Corp. v. Beckman Instruments, Inc., supra,* at 276. The offense of attempting to monopolize requires specific intent, on the part of the defendant, to create a monopoly and a dangerous probability of success. *Id.* at 275. The relevant market must be ascertained in all monopoly cases to determine if monopoly power exists. *Id.* Plaintiffs have defined the relevant product market as the market for orthopedic products and the relevant geographic market as the United States. The Court has considered both the markets for orthopedic products and electrosurgical products. Plaintiffs have adduced no significant probative evidence, either direct or circumstantial concerning Defendants' alleged unlawful intent to establish a monopoly in orthopedic or electrosurgical products. Nor have Plaintiffs come forward with any evidence, which would raise a genuine issue of mate-

rial fact as to whether the Defendants are possessed of monopoly power in either the orthopedic or electrosurgical markets. Consequently, the Court is of the opinion that Plaintiffs' Sherman Act claims under sections 1 and 2 are without merit. A mere refusal to deal without more is simply not a violation of the antitrust laws. *E. g. Solomon v. Houston Corrugated Box Co., supra,* at 397.

■ Concerning Plaintiffs' state law contract claims, the Court is of the opinion that they are equally unfounded. It is uncontroverted that Plaintiffs' contract claims could only be under Texas law. Additionally, it is established that any distributorship agreement between Plaintiff, Tim Koerner and Associates, Inc. and Defendant Aspen was oral and for an indefinite period of time. Plaintiffs have admitted that nothing prevented Tim Koerner and Associates, Inc. from abandoning the arrangement at any time. Koerner Deposition at 349–50 and 364–66. The law in Texas is well settled that if an employment contract is terminable at will by either party or for no set period of time, as here, neither party can recover damages for its termination. *East Line & R. R. R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888); *Cactus Feeders v. Wittler,* 509 S.W.2d 934, 937 (Tex.Civ.App.-Fort Worth [2d Dist.] 1973, writ ref'd n. r. e.).

■ Plaintiffs have alleged that the corporate Plaintiff was the third party beneficiary of an "override" agreement between Aspen and Zimmer to compensate old Aspen dealers for their past efforts. Assuming that such an agreement existed it would be unenforceable because "a past consideration, which imposed no legal obligations at the time it was furnished, will not support a subsequent promise to confer a benefit." *Shear Co. v. Harrington,* 266 S.W. 554, 557 (Tex.Civ.App.-Waco [10th Dist.] 1924, no writ); *see, Mason v. Babin,* 474 S.W.2d 809, 812 (Tex.Civ.App.-Waco [10th Dist.] 1971, writ ref'd n. r. e.). Accordingly, the aforementioned pendent contract claims are dismissed with prejudice. The remainder of Plaintiffs' pendent claims are not the sub-ject of Defendants' motion for summary judgment and are therefore dismissed without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Daniels v. All Steel Equipment, Inc., supra,* at 114.

■ Finally, the Court having considered Defendants prayer for further relief in the form of attorney's fees as costs and the briefs in support and opposition thereto is of the opinion that Defendants are entitled to their costs pursuant to Fed.R.Civ.P. 54 but are not entitled to recover their reasonable attorney's fees. Although the Court views this case as an example of the all too frequent effort by the mere lavish use of antitrust language to transform a sow's ear fact situation into a silk purse filled with treble damage gold, the Court is of the opinion that the filing of this suit and all that has followed is not a sufficiently flagrant abuse of the parties and court to warrant imposition of attorney's fees as costs in light of recent precedent. It is, therefore,

ORDERED that Defendants' motion for summary judgment is hereby GRANTED and Plaintiffs' claims under federal antitrust law and state contract law are hereby dismissed with prejudice. Plaintiffs state antitrust claims which are not the subject of Defendants' motion for summary judgment are hereby dismissed without prejudice. Further, it is ORDERED that Defendants may not recover their reasonable attorney's fees and all costs are taxed against the Plaintiffs.