**CARLSON MACHINE TOOLS, INC., Plaintiff,**

v.

**AMERICAN TOOL, INCORPORATED, Subsidiary of Fischer Industries, Inc., and Fischer Industries, Inc., and John D. Hendrick, Defendants.**

**Civ. A. No. H–79–2124.**

United States District Court, S. D. Texas, Houston Division.

Oct. 16, 1981.

Schleider, Ewing & Francis, Ben H. Schleider, Jr., Houston, Tex., for plaintiff.

William A. Huddleson, Cincinnati, Ohio, and Lapin, Totz & Mayer, Larry Huelbig, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER:

STERLING, District Judge.

Pending before the Court are Defendants' motion for leave to amend and motion for summary judgment. Plaintiff has not filed a response in opposition to the motion to amend and, having considered the motion, the Court is of the opinion that Defendants' motion to amend should be GRANTED.

Plaintiff's First Amended Complaint (the "complaint") alleges violations of the federal antitrust laws and makes claims under state contract and tort law. Jurisdiction is based on a federal question and diversity.

Plaintiff was engaged in the business of selling machine tool lathes as a distributor for Defendants and others. On May 31, 1979, Defendants terminated Plaintiff as a distributor and entered a distributorship agreement with Selby-Horan Machine Tools, Inc. (Selby-Horan), a competitor of Plaintiff in the South Texas machine tool lathe market. Plaintiff contends that its termination violates sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Plaintiff's Memorandum in Support of Response to Defendants' Motion for Summary Judgment omits any allegations concerning violations of the Robinson-Patman Act, 15 U.S.C. § 13, and Plaintiff declares its intention to omit this claim entirely from its proposed Second Amended Complaint. The Fourth Count of the complaint, alleging violations of the Robinson-Patman Act, is DISMISSED. The complaint further alleges that some or all of the Defendants breached the distributorship agreement, breached a purchase order contract, and wrongfully interfered with Plaintiff's contractual relationships with Defendant American Tool, Inc. (American).

Generally, summary judgments are not favored in complex antitrust litigation. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). However, summary judgment is appropriate where the movant has carried its burden of showing that no genuine issue of material fact exists and the nonmovant has failed to set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1112 (5th Cir. 1979); *Tim W. Koerner & Associates, Inc. v. Aspen Labs, Inc.*, 492 F.Supp. 294, 298 (S.D.Tex.1980). In determining the existence of a material fact issue, the record

as a whole and the factual inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Plaintiff's Response to Defendants' Motion for Summary Judgment lists at least seventeen alleged genuine material issues of fact, some of which are repetitious and many of which relate to the ultimate issue of whether Defendants violated the antitrust laws. At the outset, the Court finds that there is no genuine fact dispute as to the relevant product and geographic markets. Defendant American Tool, Inc. manufactured and distributed manually controlled (MC), numerically controlled (NC), and computerized numerically controlled (CNC) machine tool lathes of all sizes. Plaintiff was Defendants' distributor in the South Texas market. Geographic markets in the machine tool lathe industry generally follow those used by the American Machine Tool Distributors' Association in indexing sales data, and that trade association divides Texas into northern and southern markets, centered around Dallas and Houston. It is not disputed that Defendants generally would supply machine tool lathes to only one distributor in each market, nor is it disputed that Defendants' allocation of markets to distributors did not always follow the geographic lines used by the trade association. The Court further finds that there is no genuine fact dispute that at all times pertinent to the alleged wrongful termination Defendant American was not a corporate entity but was a division of Defendant Fischer Industries, Inc. (Fischer). It is not disputed that Fischer through its division American sent all of its distributors a list of suggested retail prices. The Court also finds that Fischer and its division American did not compete directly with Plaintiff or Selby-Horan in distributing machine tool lathes. The Court finds that substantial interstate trade or commerce is involved.

*Plaintiff's Sherman Act Claims*

■ To succeed on its claim under section 2 of the Sherman Act, Plaintiff must show that Defendants achieved a monopoly or at least demonstrate a dangerous probability of success. *H & B Equipment Co., Inc. v. International Harvester Co.,* 577 F.2d 239, 242 (5th Cir. 1978). The record is clear that Defendants' share of the machine tool lathe market in South Texas never exceeded ten percent and that the number of competitors in that market is increasing, with some domestic suppliers becoming direct distributors and with foreign suppliers seeking distributors. Plaintiff's claims under section 2 of the Sherman Act are DISMISSED.

■ It is settled law that a supplier has the right to select its distributors and may refuse to sell goods to anyone, for reasons sufficient to itself. *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Aladdin Oil Co. v. Texaco, Inc., supra* at 1113. However, a supplier does not have an antitrust *carte blanche* to select those with whom it will deal. A refusal to deal is unlawful when used as a device to achieve an anticompetitive goal such as to fix prices, to aid in maintaining resale price restrictions and territorial allocations, to enforce a boycott, or to promote the predatory practices of the supplier. The requirement of an illegitimate purpose or effect marks the distinction between concerted activity which is a lawful aspect of business and concerted activity which is inimical to competition. *Aladdin Oil Co. v. Texaco, Inc., supra* at 1115–16.

The First, Second and Third Counts of the complaint allege that Defendants and other entities, including Selby-Horan, combined and conspired to boycott Plaintiff from the sale of NC and CNC lathes, to fix and maintain the retail prices at which lathes were sold to the public, and to fix and maintain the geographic boundaries of each distributor's market. Plaintiff contends that it was terminated as a distributor because it was dissatisfied with its geographic territory and had asked Defendants to extend the market by adding Travis and Williamson Counties, and because Plaintiff had cancelled a purchase order for a new

line of lathes when Defendants raised the price. In rebuttal, Defendants contend that they refused to add Travis and Williamson Counties to Plaintiff's market because of Plaintiff's relative poor sales performance and failure to take on additional salesmen. Defendants allege that the price increase in the new lathe line was made because the costs of production and demand exceeded expectations. Defendants give four reasons for their decision to terminate Plaintiff as a distributor: (1) Plaintiff's relative poor sales performance; (2) Plaintiff's failure to hire sufficient salesmen to cover its territory; (3) an "embarrassing" incident when one of Plaintiff's salesmen walked out of a meeting Defendants had arranged with a customer; and (4) Plaintiff's cancellation of the purchase order for the new line of lathes.

A thorough examination of the materials comparing Plaintiff's sales performance to the expanding machine tool lathe market in the Houston area persuades the Court that Plaintiff's relative poor sales performance and failure to take on additional salesmen are highly credible reasons for Plaintiff's termination and the burden thus shifts to Plaintiff to produce significant probative evidence that Defendants and others combined or conspired for a purpose forbidden by the antitrust laws. *Joe Regueira, Inc. v. American Distilling Co., Inc.*, 642 F.2d 826, 832 (5th Cir. 1981). Plaintiff has failed to meet its burden of showing that Defendant John Hendrick had a personal stake in the object of the alleged conspiracy or was acting in a capacity other than as a corporate officer of American when Defendants made the termination decision, and Defendant Fischer could not conspire with its division, American. *H & B Equipment Co., Inc. v. International Harvester Co.*, *supra* at 244. The remaining possible co-conspirators suggested by the complaint are Plaintiff itself, Selby-Horan, and other distributors generally.

Plaintiff incorrectly attempts to characterize the alleged agreements as horizontal restraints. While entities in a seemingly vertical relationship may be deemed capable of horizontal restraints if they are actual or potential competitors, *Dougherty v. Continental Oil Co.*, 579 F.2d 954, 959 (5th Cir. 1978), Defendants are not competing as distributors in the relevant product and geographic markets and there is no significant evidence that they may do so. Where the alleged originator of the conspiracy is the supplier and not a distributor, the restraints are vertical. *H & B Equipment Co., Inc. v. International Harvester Co.*, *supra* at 245–46.

Group boycotts are per se unlawful only if the exclusionary conduct is a "naked restraint of trade." *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1366 (5th Cir. 1980). Although a vertical group boycott may reduce intrabrand competition, the achievement of distribution efficiencies may promote interbrand competition. *Balogh's of Coral Gables, Inc. v. Getz*, 510 F.Supp. 741, 746 (S.D.Fla.1981). *See Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 54, 97 S.Ct. 2549, 2559, 53 L.Ed.2d 568 (1977). Plaintiff's allegation of a vertical boycott must be tested under the rule of reason standard. In a private antitrust action brought under section 1 of the Sherman Act, proof of individual injury is insufficient in rule of reason cases. *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 699–700 (5th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976). The First Count of the complaint does not allege any injury to the public interest. The record shows that Cincinnati Milacron, formerly Selby-Horan's supplier of machine tool lathes, has become a direct distributor of machine tool lathes in the South Texas market, and that Plaintiff is now a distributor of a line of foreign made machine tool lathes. Cincinnati Milacron's decision to become a direct distributor and Defendants' subsequent decision to terminate a distributor with a relative poor sales performance and enlist Selby-Horan has resulted in an increase in the number of machine tool lathe distributors in the South Texas market, and the Court concludes that the alleged unlawful actions of Defendants and others have produced no public injury.

The Third Count of the complaint, alleging maintenance of a scheme of geographic market allocation, must also be tested under rule of reason analysis. *Continental T.V., Inc. v. GTE Sylvania, Inc., supra* at 57. The record establishes that interbrand competition has increased and that the effect of Plaintiff's termination on intrabrand competition is de minimis.

Defendants' announcement of suggested retail prices and subsequent termination of Plaintiff, alleged to be unlawful in the Second Count of the complaint, does not violate the antitrust laws in the absence of an agreement between Defendants and others to refuse to deal with those distributors who refuse to follow the suggested prices. Although a claim by an antitrust plaintiff that a defendant conspired with the plaintiff to terminate the plaintiff may be cognizable under the antitrust laws, *see Joe Regueira, Inc. v. American Distilling Co., Inc., supra* at 833 n. 18, there are no facts in this record from which the Court can infer that Plaintiff made an unlawful agreement with Defendants that resulted in Plaintiff's termination. Plaintiff attempts to raise the inference of such an agreement by alleging that Defendants used indirect coercion to compel Plaintiff and the other distributors generally to agree to maintain the suggested retail prices. Plaintiff points to the testimony of Robert Baczkowski, a district sales manager for American, who stated that Defendants would "stick up for the customer" if distributors tried to charge more than the suggested price. The absence of specific evidence that Plaintiff and the other distributors violated the alleged resale price ceiling renders Plaintiff's claim insufficient. Plaintiff's vague assertion that during 19 years as a distributor for American it made certain unspecified objections to the alleged pricing scheme is not sufficient to support a claim of indirect coercion resulting in an unlawful agreement between Defendants and Plaintiff or Defendants and the other distributors generally. *Joe Regueira, Inc. v. American Distilling Co., Inc., supra* at 833 n. 18.

Plaintiff contends that the purpose or effect of Defendants' distributorship agreement with Selby-Horan was to allow Defendants to fix the price of its lathes. Plaintiff claims that prior to its termination it was making objections to the suggested retail prices and had specifically objected to Defendants' decision to raise the price on a new line of lathes, the Eagle. Plaintiff alleges that Defendants' price increase was a breach of the purchase order contract, and that when Plaintiff cancelled its purchase order Defendants conspired with Selby-Horan to maintain the price increase by terminating Plaintiff. It is not controverted by Plaintiff that another distributor in the Pittsburgh area also cancelled its purchase order for Eagle lathes after Defendants' price increase and that distributor was not terminated. In light of this fact and considering that Defendants' other reasons for terminating Plaintiff are highly credible, the burden is on Plaintiff to do more than merely allege that an agreement was made between Defendants and Selby-Horan to terminate Plaintiff for its opposition to the price increase. Plaintiff has failed to produce significant probative evidence of such an agreement, and the Court concludes that Defendants' decision to terminate Plaintiff was unilateral.

*Plaintiff's State Law Claims*

The briefs cite Texas authorities, and the Court will apply Texas law to the state law claims.

The Fifth Count of the complaint alleges that Defendant American wrongfully breached the distributorship agreement by terminating Plaintiff. The Court has determined that the reasons for termination offered by Defendants are highly credible and that Plaintiff has failed to produce significant probative evidence of other reasons. Since the reasons offered by Defendants present a just cause for termination, the Court finds that American did not breach the distributorship contract.

The Sixth Count of the complaint alleges that Defendant American breached its purchase order contract to sell a new line of lathes to Plaintiff at a fixed price by declaring that it could not honor the purchase order at the stated price. On November 27, 1978, American solicited orders for its new lathe, the Eagle, from Plaintiff and

pledged that all orders would be firm when acknowledged by American. Plaintiff had ordered six Eagles in June, 1978, and that order had been acknowledged by American. On November 28, 1978, Plaintiff ordered six additional Eagles. The complaint declares that this second order was firm, but Plaintiff's brief declares that "American acknowledged only the first order." Plaintiff's argument is that because American later attempted to have Plaintiff renew its cancelled second order, American is estopped from claiming the second order was not firm. The Court finds this argument without merit.

The Seventh and Eighth Counts of the complaint allege that Defendants and others wrongfully interfered with the contractual relationships between Plaintiff and American. Plaintiff's brief recognizes that only Defendant John Hendrick could be liable under this cause of action, and then only if acting in a personal, rather than an official, capacity. The Court has found that Plaintiff has failed to produce significant probative evidence to rebut the facts in this record showing that Hendrick was acting as a corporate officer for American.

It is, therefore,

ORDERED that Defendants' motion for leave to amend and motion for summary judgment are GRANTED.