141 So.2d 327 (1962)
Helen C. Heekin SCHENKEL, Appellant,
v.
THE ATLANTIC NATIONAL BANK OF JACKSONVILLE, as Executor of the Estate of Katherine Falconer, Deceased, Appellee.
No. D-138.
District Court of Appeal of Florida, First District.
May 17, 1962.
*328 Charles J. Regero, Fred S. Rizk, and Frank C. Decker, Jacksonville, for appellant.
McCarthy, Adams & Foote, Jacksonville, for appellee.
CARROLL, DONALD K., Chief Judge.
The plaintiff has appealed from an order entered by the Circuit Court for Duval County granting a new trial, to which order, also, the defendant has filed cross assignments of error.
The pleading complex involved in this appeal is briefly as follows:
On December 6, 1960, the plaintiff filed her complaint in three counts. In the first count she alleges that the defendant, as the executor of the estate of Katherine Falconer, deceased, is indebted to the plaintiff for "nursing, general care, household assistance and companionship sevices" rendered by the plaintiff at the request of Mrs. Falconer, who died on July 19, 1959; that the value of such services is $26,400, which services "were agreed to be paid for upon the death of said Katherine Falconer"; that the said services were rendered and accepted continuously from September 1, 1946, to August 26, 1957; that the plaintiff duly filed a claim for this indebtedness but the defendant filed an objection thereto and refuses to pay this claim.
*329 In her second count the plaintiff alleges that Mrs. Falconer "did hire and engage" the plaintiff to perform the mentioned services and in consideration thereof agreed to pay the plaintiff $200 a month for such services; that this compensation was to be cumulative and the total amount due for such services was to be left to the plaintiff in Mrs. Falconer's will; that at some time subsequent to August 25, 1957, Mrs. Falconer, in violation of this agreement, changed her will and omitted therefrom a provision of such payment to the plaintiff; and that the total amount due under the said agreement is $26,400, for which a claim was filed by the plaintiff but payment thereof was refused by the defendant.
The plaintiff's complaint also contains a third count alleging a series of independent contracts, but that count was dismissed by the Circuit Court on April 27, 1961, and is not an issue on this appeal.
To the above complaint the defendant filed an answer containing what amounts to a general denial, and also the following affirmative defenses to the first count: as the second defense, that this was an action upon a contract, obligation, or liability not founded upon an instrument in writing and was not commenced within the three-year period permitted by the Florida Statute of Limitations; as the fourth defense, that the cause of action was founded on a contract to make a bequest or devise and, not being in writing, is in violation of the Statute of Frauds; and as a sixth defense, that the first count is founded upon a contract not intended by the parties to be performed within a year and the said contract was not in writing as required by the Statute of Frauds.
The defendant's third, fifth, and seventh defenses, addressed to the second count of the plaintiff's complaint, are similar to the above-described second, fourth, and sixth defenses, respectively.
In an order entered on May 18, 1961, the Circuit Court granted the plaintiff's motion to strike the third, fourth, and fifth defenses, and at the close of the testimony at the trial the court struck the second and sixth defenses.
At the trial the plaintiff, a registered nurse, testified that she had performed various services for Mrs. Falconer, including taking her to doctors, buying clothes, and landscaping the yard, and estimated that she spent "at least four hours a day" over the entire period of 1946 to 1957, estimating the value of her services at $200 a month, for a total of $26,400. A neighbor testified that Mrs. Falconer was going to leave the plaintiff "everything" in her will, but this testimony was stricken by the court. The plaintiff's mother-in-law testified that Mrs. Falconer "was going to provide for her at her death. * * *" The sister-in-law of the plaintiff testified that Mrs. Falconer had said in 1947 "I am paying Helen $200.00 a month for taking care of me until my death, she will get paid after I die." Another registered nurse estimated the value of the plaintiff's services at $200 a month. A second neighbor testified that Mrs. Falconer told her in 1954 that "Helen will get her $200.00 a month immediately following my death."
At the close of the testimony the Circuit Court granted a directed verdict for the defendant on the second count of the complaint, and the jury returned a verdict of $18,000 under the first count.
The defendant then filed a "motion for a new trial and/or Non Obstante Verdicto." The Circuit Court denied the motion for a judgment n.o.v., vacated the directed verdict in favor of the defendant on the second count, and granted a new trial as to the second count, and granted a new trial on the stated grounds that the court had erred: in striking the defendant's second and sixth defenses, in overruling the defendant's objection to the plaintiff's testimony concerning the nature and extent of her services to Mrs. Falconer and that concerning transactions and communications between her and Mrs. Falconer, and in giving *330 a certain charge requested by the plaintiff.
As to the second defense (invoking the three-year statute of limitations  Section 95.11(5) (e), Florida Statutes, F.S.A.), the appellant-plaintiff contends that the statute of limitations does not begin to run until the debt is due and the debt here became due on July 19, 1959, when Mrs. Falconer died. This contention is well supported by the case of Briggs v. Fitzpatrick, Fla., 79 So.2d 848 (1955), involving an analogous factual situation, in which case the Supreme Court of Florida said:
"What she did allege in her complaint, and support by evidence which the jury had the right to believe, was an express oral contract to perform services, when requested, during the lifetime of the decedent, for which payment was to be postponed until the death of the decedent; and it was never made to appear either by pleadings or by proof that either party to the contract contemplated uninterrupted continuity of such services as an absolute condition precedent to the plaintiff's right to rely upon her aunt's promise of compensation at her death.
"In such a situation the law is that the period of limitations does not begin to run, in the absence of a repudiation of the contract by one of the parties, until the death of the promisor, for the reason that the debt is not due until that time. In re Shambow's Estate, 153 Fla. 762, 15 So.2d 837. 57 Am.Jur., Wills, Sec. 182, p. 160. Annotations, 69 A.L.R. 166, 106 A.L.R. 764. Moreover, the fact that the express contract may be an oral rather than a written one does not affect the validity of the obligation. See Berger v. Jackson, 156 Fla. 251, 156 Fla. 768, 23 So.2d 265."
On the authority of this case we think that the Circuit Court correctly struck the second defense but erred in assigning it as a ground for the new trial.
With reference to the sixth defense (that the first count is founded upon an oral contract not intended to be performed within one year from the date thereof, which contract was not in writing as required by law  Section 725.01, Florida Statutes, F.S.A.), the appellant contends that the Statute of Frauds, requiring contracts "not to be performed within the space of one year" to be in writing, is not applicable in the instant case because, since death is uncertain, the contract could have been terminated prior to the expiration of one year. This contention is supported by the decision of the Supreme Court of Florida in Berger v. Jackson, 156 Fla. 251, 23 So.2d 265 (1949), and, again, we hold that the Circuit Court erred in granting a new trial on the ground, among others, that it had erred in striking the sixth defense.
With reference to the third ground for granting a new trial (that the court erred in overruling the defendant's objection to the plaintiff's testimony concerning the nature and extent of her services to Mrs. Falconer), the appellant contends that her testimony did not constitute a "transaction or communication" with the deceased within the meaning of the Florida Dead Man's Statute (Section 90.05, Florida Statutes, F.S.A.), which reads:
"90.05 Witnesses; as affected by interest.  No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, *331 heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."
In any event, the appellant contends, the defendant waived the protection of this statute by failing specifically to invoke the statute when it objected to the testimony in question.
On the other hand, the appellee relies upon the case of Chapin v. Mitchell, 44 Fla. 225, 32 So. 875 (1902) for the proposition that testimony involving services tending to prove a transaction between the parties is barred by the Dead Man's Statute.
As to the appellant's contention of waiver, we think that a reading of the transcript of the trial proceeding makes it reasonably clear that the defendant was relying on the Dead Man's Statute when it interposed its numerous objections to the testimony in question. In any event, the trial court was in a better position than is this court to determine this question of waiver, and that court held that it erred in overruling the defendant's objections to the testimony in question.
The final ground mentioned by the trial court for granting a new trial is that the court erred in giving to the jury the following instruction requested by the plaintiff:
"The Court instructs you that if you find from a preponderance of the evidence that valuable services were rendered by the plaintiff to Mrs. Katherine Falconer and those services were performed and were knowingly accepted by her  and those services were knowingly accepted by Mrs. Falconer, you may find those services were given and received in expectation of being reasonably paid for."
We agree with the trial court that it erred in giving this charge. The charge, we think, was erroneously given because it authorizes a recovery by the plaintiff on a theory inconsistent with both counts of the plaintiff's complaint.
In the first count the plaintiff alleges that her services "were agreed" to be paid for at the death of Mrs. Falconer. In her second count the plaintiff alleges that Mrs. Falconer "did hire and engage" her to perform the services and "agreed to pay" the plaintiff $200 a month in consideration thereof. The conclusion seems to us inevitable that the plaintiff through these allegations is suing upon an express contract, that her complaint in both counts sounds in "special assumpsit" rather than general assumpsit (such as in quasi-contract or implied contract), in which the measure of damages would be "quantum meruit" or "quantum valebant." The trial court, therefore, committed an error in giving the questioned instruction, which was not proper in view of the fact that in both counts of her complaint the plaintiff is suing upon an express agreement.
We, therefore, hold that the trial court properly granted the new trial on both counts, even though some of its stated reasons were insufficient to justify that action.
Another applicable rule established in Florida is that a strong showing must be made to reverse an order granting a new trial. See Archibald v. Wittmer, 120 So.2d 236 (Fla.App., 1960).
The order appealed from, therefore, should be and it is
Affirmed.
WIGGINTON and RAWLS, JJ., concur.