JOE REGUEIRA, INC., d/b/a Florida Wholesale Liquor and General Wholesale Liquor Company of Florida, Plaintiffs,

Joe Regueira, Inc., d/b/a Florida Wholesale Liquor, Plaintiff-Appellant,

v.

The AMERICAN DISTILLING COMPANY, INC., Defendant-Appellee.

No. 79–2295.

United States Court of Appeals, Fifth Circuit.

Unit B

April 17, 1981.

---

Levine, Freedman, Hirsch & Levinson, Arnold D. Levine, Tampa, Fla., for plaintiff-appellant.

Hofheimer, Gartlir, Gottlieb & Gross, Sylvia D. Garland, New York City, for defendant-appellee.

Before HILL, KRAVITCH and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge.

Plaintiff-appellant Joe Regueira, Inc. [Regueira] appeals from summary judgment entered in favor of defendant-appellee American Distilling Company, Inc. [American] on Regueira's contract and antitrust claims. Regueira, a wholesale distributor of alcoholic beverages, had been the exclusive distributor of American's products in the Tampa, Florida area for forty years until American terminated it. In its suit,

Regueira maintained that the termination violated an oral perpetual contract and the federal antitrust laws. We affirm the grant of summary judgment on both claims.

## I. Facts

Regueira was, prior to October 1, 1976, a wholesale distributor of various brands of alcoholic beverages in the Tampa, Florida area. American was a national manufacturer of alcoholic beverages. Regueira contends that there had been an oral agreement that Regueira would continue to be American's exclusive distributor in the Tampa area as long as Regueira actively promoted American's brands and maintained its share of the sales of American's brands in Florida. American denies the existence of such an agreement.

Regueira alleges that American threatened Regueira with termination if Regueira did not sell at prices set by American. Regueira sold at the set prices, which were high, causing Regueira's sales to decline. Regueira also contends that in February of 1976 American conditioned an increase in the depletion allowance for two brands on Regueira not selling either brand to any major retailer that did not resell at specified elevated prices. When Regueira's major retailers refused to sell at the set retail prices, Regueira, to obtain the much needed depletion allowance, stopped selling to these retailers. Thus Regueira's sales further declined.[1] However, Regueira's share of American's sales in Florida allegedly did not decline. Regueira also maintains that at all times it actively promoted American's brands.

On July 1, 1976, American gave Regueira notice that it was terminating its distributorship as of August 1, 1976. Regueira contends that American's reasons were Regueira's objections to American's dictation of wholesale and retail prices. In support of its claim, Regueira points to American's retention of a Miami distributor whose sales performance was inferior to Regueira's.[2]

American denies that it dictated retail prices or Regueira's resale prices. American contends that it terminated Regueira (and replaced it with a subsidiary of National Distillers of Atlanta [the replacement is hereinafter referred to as National]) as a matter of business judgment based on Regueira's poor sales performance, bad record of paying its debts to American, and lack of enthusiasm especially after the November 1, 1975 national increase in sale price to distributors. The district court found that the termination was an exercise of business judgment.[3]

American maintains that at the time of termination Regueira was substantially behind in its payments for merchandise. Regueira claims that until notified of the termination it paid its bills on time. At trial, American was granted summary judgment for its counterclaim against Regueira for $114,735.08 (plus interest), $82,377.13 of which was past due on July 1, 1976. Regueira has not appealed this ruling.

American asserts that prior to the termination Regueira began negotiations for the sale of its business. The sale occurred September 30, 1976; it included a noncompetition covenant on Regueira's part.

In its suit filed before its sale of the business, Regueira asked the district court to order American to retain Regueira as its exclusive distributor in the Tampa area under the perpetual distributorship agreement, relief which is no longer appropriate due to the sale. Regueira also prayed for

---

**1.** Regueira contends that its sales had increased until 1975 when American raised its price to distributors. The price fixing referred to in the text allegedly accelerated this decline.

**2.** Regueira mentions, but does not on appeal meaningfully raise the claim that the termination violated 15 U.S.C. § 1 because American was reducing the number of distributors.

**3.** Although this is a finding of fact, we need not find it clearly erroneous in order to set it aside, since it was made on summary. As discussed *infra*, we review grants of summary judgment independently. *See National Screen Services Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir. 1962).

treble damages, attorney's fees, and any other appropriate relief.[4]

## II. *Issues*

Was there a genuine issue of material fact with respect to: 1) whether American breached the alleged perpetual distributorship agreement; 2) whether American terminated Regueira for unlawful anticompetitive purposes?

## III. *Discussion*

### A. *Summary Judgment*

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). When the parties' dispute is factual (rather than legal, e. g., whether a given fact is "material" to a claim or defense), the court, in deciding whether the dispute is "genuine," may only consider evidence which would be admissible at trial. Fed.R.Civ.P. 56(e); *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 556 (5th Cir. 1980); *Broadway v. City of Montgomery,* 530 F.2d 657, 661 (5th Cir. 1976). In these instances, "the burden of proof falls upon the party seeking the summary judgment, and all reasonable doubts as to the existence of a genuine issue of material fact 'must be resolved against the moving party.'" *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). "On the other hand, one who resists summary judgment must meet the movant's [admissible] affidavits with opposing [admissible] affidavits setting forth specific facts to show why there is an issue for trial, or at the very least stating reasons why he cannot do so." *Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir. 1978).

The district court's order granting summary judgment under the above standards is not a discretionary decision and thus should be independently reviewed by this court. *See National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir. 1962).[5]

In an antitrust case where intent is a crucial factor, summary judgment should be used sparingly. *See Poller v. CBS,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *United States v. Realty Multilist, Inc.,* 629 F.2d 1351, 1361 (5th Cir. 1980); *Pan-Islamic Trade.* However, summary judgment is still appropriate where the plaintiff does not produce "significant probative evidence demonstrating that a genuine issue of [material] fact exists." *Pan-Islamic Trade* at 554; *Blackburn v. Crum & Forster,* 611 F.2d 102 (5th Cir. 1980). One important factor in determining whether the plaintiff has produced sufficient evidence is whether the alleged conspiracy would have a substantial business advantage for the defendant. *See First National Bank v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (implied).

### B. *The Contract Claim*

There is clearly a genuine issue of fact with respect to the existence of the oral perpetual contract. American contends, however, that it is nevertheless entitled to summary judgment because even if such a contract existed, it would be invalid, and even if it were valid, American did not violate it.

Before addressing American's contentions, we must decide whether under Florida law[6] the alleged contract would be construed as an "indefinite contract," which is terminable at will by either party upon reasonable notice. *See Gulf Cities Gas Corp. v. Tangelo Park Service Co.,* 253 So.2d 744 (Fla.Dist.Ct.App.1971); *Florida-Georgia Chemical Co. v. National Laboratories,* 153

---

4. The failure to specifically pray for damages on the contract claim does not preclude Regueira from contending before this court that it is entitled to such damages. *See Sapp v. Renfroe,* 511 F.2d 172, 176 n.3 (5th Cir. 1975).

5. *National Screen* holds, however, that the denial of a motion for summary judgment is a discretionary decision.

6. The parties agree that Florida law applies in determining the construction and validity of the alleged oral contract.

So.2d 752 (Fla.Dist.Ct.App.1963). Both *Gulf Cities* and *Florida-Georgia Chemical* define "indefinite contracts" as those wholly lacking in any reference to the duration of the contract. Such contracts are contrasted with "perpetual contracts," which, we infer, may continue perpetually under an agreed upon duration term. The alleged oral agreement in the instant case, which continues until Regueira's promotion or share of American sales in Florida declines, is properly characterized as a perpetual contract and is thus not terminable at will with reasonable notice.[7]

Appellee argues that the agreement is void under the Florida Statute of Frauds, Fla.Stat.Ann. § 725.01, which requires agreements which are not to be performed within one year to be in writing.[8] However, under *Schenkel v. Atlantic National Bank of Jacksonville*, 141 So.2d 327 (Fla. Dist.Ct.App.1962), an oral contract which would continue until one party's death was held not to be within § 725.01, since the "contract could have been terminated [under its terms] prior to the expiration of one year." *Schenkel* at 330. This rationale applies in the case before us, where at the time of the making of the contract[9] Regueira could have, for example, failed to maintain its market share and been terminated prior to the expiration of one year. The broad application of this rationale is supported by a more recent case which, in dicta, includes, in addition to death, resignation and firing as events which could occur within a year and thus, if used to measure the duration of a contract, remove the contract from the Statute of Frauds. *See First Realty Investment Corp. v. Gallaher*, 345 So.2d 1088 (Fla.Dist.Ct.App.1977). The alleged oral contract thus would be valid.

The next question is whether there is a genuine issue of fact as to whether American violated the contract either by an unjustified termination or by a termination preceded by insufficient notice.

To avoid termination under the alleged contract, Regueira had to actively promote American's brands and maintain its share of the sales of American's brands in Florida. With regard to promotion, American relies primarily on the affidavit of Burton Gintell, its Treasurer and Vice President Finance and Administration. In turn Gintell relies on the "findings of the Trade Research Company surveys." The surveys, however, were inadmissible hearsay and "entitled to no weight" on a motion for summary judgment. *Pan-Islamic Trade* at 556. Aside from the surveys, American affiants make only vague assertions that Regueira's promotion was inadequate. The affiants do not show personal knowledge of any of the facts alleged. Moreover, Regueira's affidavit rebuts American's assertions with its own, which are at least as specific. Hence, American has not demonstrated that there is no genuine issue of material fact with respect to the inadequacy of Regueira's sales efforts.

---

7. We need not reach the question whether this contract is truly perpetual or whether Florida public policy against restraints of trade would render the perpetual term invalid. *See generally Stewart v. Stearns & Culver Lumber Co.*, 56 Fla. 570, 48 So. 19 (Fla.1908). American did not make the public policy argument before this court. Moreover, there is no showing that the perpetual term is not severable. Thus, the contract is at least enforceable for a reasonable period of time which would include the summer of 1976, especially in light of the alleged reaffirmation of the contract by American. *See* note 9 *infra*. *See City of Miami Beach v. Klinger*, 179 So.2d 864 (Fla.Dist.Ct.App.1965) (intent of parties crucial to severability of contract); *cf. Auto Club Affiliates, Inc. v. Donahey*, 281 So.2d 239 (Fla.Dist.Ct.App.1973) (under Fla.Stat. § 542.12 (1973), court has jurisdiction to determine a reasonable duration for an unreasonably long covenant not to compete).

8. Section 725.01 provides in relevant part:
   No action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized.

9. Although not necessary for our holding, we note that Regueira contended in its affidavit and complaint that the new President of American had, prior to the notice of termination, reaffirmed the oral contract made previously.

Nor does American produce any significant evidence with respect to Regueira's share of American's sales in Florida. Thus, again American has failed to establish a violation of the alleged contract by Regueira which would justify termination.

■ American alleges that Regueira's termination was justified by its failure to pay its debts to American when they became due, undoubtedly a term in the alleged oral contract. Regueira, by affidavit, denies the existence of any unpaid debt prior to the notice of termination. However, this general denial is insufficient to overcome American's specific affidavits showing that on July 1 Regueira was overdue in the sum of $82,377.13 owed to American, more than half of which had been due since May 15.[10] *See Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978). The parties do not discuss whether the alleged contract provided for any substantial grace period during which mature debts would not justify termination. The existence of the unpaid debts, however, shifted the burden to Regueira to come forward with specific facts showing such unpaid debts were not, on July 1, a permissible reason for termination under the contract. Regueira produced no such facts and hence did not meet this burden. Thus, unless American gave Regueira insufficient notice, the district court's grant of summary judgment for American on the breach of contract claim was proper.

Regueira argues that thirty-day notice was insufficient in light of its substantial investment in promoting and selling American brands. There was no evidence as to what the alleged oral contract provided with respect to notice. But here American showed that Regueira was substantially behind in paying its bills. This was sufficient to shift the burden to Regueira to produce evidence showing the contract required American, despite the delinquency, to continue to sell to Regueira for an extended period of time. In the absence of such rebuttal evidence from Regueira, the thirty-day notice was lawful.

Accordingly, we hold that American was entitled to summary judgment on the contract claim.

### C. *Antitrust Claims*

Regueira's antitrust claim is based on Section 1 of the Sherman Act, 15 U.S.C. § 1 [hereinafter § 1][11] which has been construed to prohibit concerted activity that unreasonably restrains trade. *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 65 L.Ed. 619 (1911); *Aladdin Oil Co. v. Texaco Inc.*, 603 F.2d 1107 (5th Cir. 1979).

■ Regueira contends that its termination had an anticompetitive purpose—to enable American to set wholesale and retail prices—and implicitly claims that American combined with National to achieve this purpose. (On the possibility that American "combined" with Regueira to terminate Regueira and achieve this purpose, *see* note 18 *infra*.) If this were so, American would have violated § 1. Although a manufacturer may, without violating § 1, terminate a distributor without a valid business reason,

---

10. As noted *supra*, the district court granted summary judgment for American on its counterclaim for amounts due from Regueira. The court found that Regueira was behind on its payments as of July 1, precisely as alleged by American. Because of our disposition, we need not decide whether this was then a final order under Fed.R.Civ.P. 54(b) and thus no longer appealable, so that Regueira would be barred from relitigating matters decided therein. *See Exhibitors Posters Exchange, Inc. v. National Screen Service, Inc.*, 517 F.2d 110 (5th Cir. 1975); *Travelers Insurance Co. v. Busy Electric Co.*, 294 F.2d 139 (5th Cir. 1961). Nor need we decide whether, if the judgment on the counterclaim was not final until the judgment on the main claim, Regueira properly challenged on appeal the district court's finding with respect to when Regueira's debts arose.

We also note that according to American's affidavits, Regueira had been substantially behind in its payments for over five years. Regueira does not argue waiver (or the existence of a credit agreement) by reason of American's failure to terminate during those five years. We do not raise such arguments *sua sponte*.

11. Section 1 provides in relevant part:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . .

the manufacturer may not, in combination with another, terminate a distributor if the purpose or effect of the termination is unreasonably anticompetitive. *Aladdin* at 1115; *Burdett Sound, Inc. v. Altec Corporation*, 515 F.2d 1245, 1248 (5th Cir. 1975). A purpose to fix wholesale and/or retail prices is *per se* unreasonably anticompetitive. *See United States v. Parke, Davis & Co.*, 362 U.S. 29, 47, 80 S.Ct. 503, 513, 4 L.Ed.2d 505 (1960). Moreover, a manufacturer's combination with the distributor replacing the plaintiff is sufficient to satisfy the concerted activity requirement under § 1. *See Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1967).

American makes two contentions: 1) Regueira did not allege a combination between American and National, and 2) the purpose of the termination was Regueira's poor sales performance and overdue debts. The first contention is easily disposed of. Liberally read, Regueira's complaint does allege a conspiracy between American and National.[12] *See generally Spalitta v. National American Bank of New Orleans*, 444 F.2d 291 (5th Cir. 1971) (complaint should be read liberally).

■ To support its contention that Regueira's poor sales performance caused the termination, American introduced affidavits that relied on surveys and tables which

were inadmissible hearsay "entitled to no weight" on a motion for summary judgment. *Pan-Islamic Trade* at 556. As noted, however, American did allege that Regueira's delinquency in payments was a motivating factor in the termination. Regueira's substantial delinquency is a highly credible reason for the termination;[13] thus, the burden shifts to Regueira to produce "significant probative evidence" that price fixing was the real purpose or at least a substantial contributing purpose of the termination.[14] Regueira relies on the affidavit of its President who alleges that American threatened Regueira with termination if it did not resell at specific high prices and that American conditioned significant depletion allowances for two brands on Regueira only selling to the major retailers that sold at certain prices.[15] Although this evidence may be sufficient to show an unlawful combination between Regueira and American prior to the termination,[16] it does not show that Regueira's termination was the result of a combination between American and National to fix wholesale and retail prices. Regueira produces no evidence that National was aware of the scheme or that it would comply with it; Regueira's proof is thus logically insufficient to show a combination between American and National that had an anticompetitive purpose or effect.

---

12. Although Regueira, in answering an interrogatory, maintained that employees of American were the only members of the alleged conspiracy, we need not accept this where the complaint and affidavits are to the contrary and indicate that the answer given to the interrogatory did not reflect Regueira's position.

13. Although Regueira had been delinquent for over five years, it is still highly credible that the delinquency was the reason for the termination. In its affidavits, American notes that financial difficulty forced it to reassess its tolerance of late payment.

14. In light of our disposition, we need not discuss whether and when the latter, a contributing purpose to fix prices, would constitute an antitrust violation.

15. On the illegality of conditioning price supports on adherence to a price fixing scheme, *see generally Lehrman v. Gulf Oil Corp.*, 464 F.2d 26 (5th Cir. 1972).

16. Regueira does not contend on appeal that there is a genuine issue of material fact with respect to whether prior to the termination American unlawfully combined with Regueira to set wholesale and retail prices. Regueira's brief does discuss facts which would arguably make out such a violation (*see Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1967) (one who is not an active participant in formulating the price fixing scheme is not blocked by the *in pari delicto* doctrine from recovering under this theory); *Albrecht*, 390 U.S. at 150 n.6, 88 S.Ct. at 872 n.6), but does not raise this legal theory, relying solely on the theory that the termination was unlawful under § 1. Thus, we need not discuss further a possible unlawful combination between American and Regueira prior to the termination (on the possibility of a combination between Regueira and American to terminate Regueira unlawfully, *see* note 18).

*See, e. g., H & B Equipment Co., Inc. v. International Harvester*, 577 F.2d 239 (5th Cir. 1978).[17] In addition, Regueira produces no evidence that it violated American's price fixing scheme; rather it makes inadequately vague assertions that certain undescribed objections to the scheme caused the termination. Hence, Regueira did not satisfy its burden of producing significant probative evidence that Regueira's termination was the result of a combination between American and National which had as its purpose or effect the fixing of wholesale and retail prices.[18]

### IV.  *Conclusion*

For the reasons set forth above, we hold that the grant of summary judgment on both the contract claim and the antitrust claim should be AFFIRMED.

See also, 5 Cir., 642 F.2d 837.

**17.** Even if we read into Regueira's complaint and brief an allegation that there was a combination between American and the other distributors or the retailers sold to (*see United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960)), there was no evidence that anyone except Regueira ever complied with the alleged price scheme.

**18.** Regueira's brief can reasonably be read as arguing that American combined with Regueira to unlawfully terminate Regueira. *See Sahm v. V–1 Oil Co.*, 402 F.2d 69 (10th Cir. 1968); *cf. Albrecht*, 390 U.S. at 150 n.6, 88 S.Ct. at 872 n.6 (seems not to foreclose such a claim). We

need not discuss the validity of such a legal theory. Even if it were valid, Regueira, as noted in the text, has not made a sufficient showing that its delinquency was not the purpose of its termination. Alone, the absence of any specific evidence that Regueira violated the alleged price fixing scheme renders Regueira's showing insufficient.

Regueira also argues that it is not necessary to show a combination, conspiracy, or contract to prove a violation of § 1. This is a frivolous argument unsupported by any authority. *See* 15 U.S.C. § 1.