**ANDERSON ENGINES, INC., a Florida corporation, Plaintiff,**

v.

**BRIGGS & STRATTON CORPORATION, a Delaware corporation, and Spencer Engine & Magneto, Inc., a Florida corporation, Defendants.**

No. 79–533–Orl–Civ–R.

United States District Court,
M. D. Florida,
Orlando Division.

Feb. 17, 1982.

John Crider, Crystal River, Fla., for plaintiff.

Davisson F. Dunlap, Edward A. Marod of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Orlando, Fla., for Briggs & Stratton.

Keith Rounsaville of Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill and Richard W. Reeves, Tampa, Fla., for Spencer Engine.

## MEMORANDUM OF DECISION

JOHN A. REED, Jr., District Judge.

### Pleadings and Facts

This cause has been considered by the court on a motion for summary judgment filed by the defendants. The amended complaint alleges that on 30 September 1971 the plaintiff was designated by the defendant Spencer Engine & Magneto, Inc. (hereafter Spencer) to act as an authorized service distributor for small gasoline powered engines and replacement parts manufactured by defendant Briggs & Stratton Corporation (hereafter Briggs & Stratton). At the same time, the plaintiff was assigned a sales territory. According to the amended complaint, the defendant Spencer is the exclusive wholesale distributor in Peninsular Florida for small gasoline powered engines and replacement parts manufactured by defendant Briggs & Stratton and others. Briggs & Stratton allegedly delegated to the defendant Spencer complete control over the offering and terminating of distributorships in Florida. It is further alleged that on or about 31 May 1979, defendants assigned plaintiff's former territory to Rev-Cut, and on 10 June 1979 the defendant Spencer terminated the plaintiff as an authorized service distributor for Briggs & Stratton. Since 10 June 1979, Briggs & Stratton and various other manufacturers listed in paragraph 21 of the amended complaint have refused to supply the plaintiff with engines and replacement parts. The amended complaint generally alleges that the concerted refusal of the defendants and other named manufacturers to deal with the plaintiff is a violation of Sections 1 and 2 of the Sherman Act. The answers of the defendants deny the existence of a conspiracy and Sherman Act violations.

From Exhibit 20 to the deposition of Gwen Anderson taken on 23 October 1980, it appears that the defendant Spencer on 10 May 1979 informed the plaintiff that Spencer would cease to supply the plaintiff with small gasoline engines and replacement parts manufactured by Briggs & Stratton and nine other manufacturers. An affidavit by E. W. Spencer II, the president of defendant Spencer, acknowledges that Spencer is an agent for Briggs & Stratton and most of the manufacturers referred to in paragraph 21 of the amended complaint. Mr. Spencer's affidavit states that defendant Spencer has the authority to appoint

and terminate wholesale distributors in Peninsular Florida as authorized distributors of those manufacturers. Pursuant to that authority, the defendant Spencer approved the plaintiff in September 1971 as an authorized wholesale distributor for various products including engines and parts manufactured by the defendant Briggs & Stratton.

The affidavit of Mr. Spencer states that on 11 May 1979 he gave Howard Anderson, plaintiff's president, a letter terminating plaintiff as an authorized service distributor effective 10 June 1979. The reasons for the termination are listed in paragraph 24 of the affidavit as follows:

24. My reasons for terminating Anderson Engines as ASD included:

(a) Failure to maintain adequate inventory;

(b) Poor service attitude;

(c) Inadequate outside sales personnel and poor counter personnel;

(d) Poor inventory control;

(e) Continued lack of cooperation with Spencer Engine;

(f) Undependability of Anderson Engines.

In paragraph 25 of the affidavit, Mr. Spencer negates various causes for the termination as follows:

25. I did not terminate Anderson Engines in order to (a) acquire a monopoly for Spencer Engine, (b) fix prices, (c) establish market dominance for Spencer Engine and Drive out a competitor, (d) aid the enforcement of resale price restrictions or territorial allocations, (e) increase Spencer's market share, (f) enforce a boycott, or (g) promote any other predatory practice.

The affidavit of C. Joseph Cook, a district service manager with Briggs & Stratton, outlines the method used by Briggs & Stratton for the distribution of its engines. In paragraphs 16 and 17 Mr. Cook indicates that Briggs & Stratton sells its engines and replacement parts to central service distributors who in turn sell them to authorized service distributors. Briggs & Stratton does not, according to Mr. Cook's affidavit, sell its products directly to any authorized service distributors.

The parties have stipulated in the pre-trial stipulation that after 11 May 1979, Rev-Cut, a business owned and operated by Daniel Tompkins, became the authorized service distributor for engines and parts distributed by Spencer in Orange, Osceola, Seminole and Lake counties. It is established by the deposition of both E. W. Spencer II and Daniel Tompkins that neither Mr. Spencer nor any member of the Spencer family, nor the defendant Spencer has any ownership interest in Rev-Cut. The parties have stipulated that after the plaintiff's termination, the plaintiff has remained in the business of distributing at wholesale small engines and replacement parts in Central Florida and that before such termination the plaintiff bought engines and replacement parts only from the defendant Spencer.

The elimination of the plaintiff as an authorized service distributor has not effective any significant change in the availability of the relevant products in question to retailers in the Peninsular Florida area. This is shown by paragraphs 8, 9, and 10 of Mr. Spencer's affidavit and by the undisputed fact that the plaintiff was replaced as a Spencer "A.S.D." in the territory previously served by the plaintiff. Paragraphs 8, 9 and 10 of Mr. Spencer's affidavit read as follows:

8. During the period January 1, 1975 through June 10, 1979, Spencer Engine sold engines and parts directly to fifteen full-line ASD's in peninsular Florida.

9. From June 11, 1979 to February 29, 1980, Spencer Engine sold engines and parts directly to fourteen ASD's in peninsular Florida.

10. From March 1, 1980 to date, Spencer Engine has sold engines and parts directly to fifteen ASD's in peninsular Florida.

*Analysis of Defendants' Motion for Summary Judgment*

While summary judgments are rarely granted in complex cases, they are available on a proper record. The Supreme Court pointed out in *Reiter v. Sonotone Corp.*, 442

U.S. 330 at 345, 99 S.Ct. 2326 at 2334, 60 L.Ed.2d 931 (1979):

> Recognition of the plain meaning of the statutory language "business or property" need not result in administrative chaos, class-action harassment, or "windfall" settlements if the district courts exercise sound discretion and use the tools available.

Where the movant makes the requisite showing in support of a motion for summary judgment, the opposing party, under Rule 56(e), Federal Rules of Civil Procedure, must make some evidentiary showing to justify a conclusion that a genuine issue of material fact exists. *Southern Concrete Co. v. United States Steel Corp.*, 535 F.2d 313, 318 (5th Cir. 1976), *cert. denied*, 429 U.S. 1906, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Oglesby v. Terminal Transport Co., Inc.*, 543 F.2d 1111, 1112 (5th Cir. 1976).

The plaintiff's memorandum in opposition to the motion for summary judgment asserts that the plaintiff has a viable antitrust claim on any one of the following theories:

> (1) Plaintiff was terminated as an authorized service distributor, ("ASD") pursuant to a horizontal conspiracy between several manufacturers including Briggs & Stratton, Tecumseh, Kohler, and others with the assistance of Defendants, Spencer Engines and Magneto, Inc. in violation of Sherman Act Section 1.

> (2) Plaintiff was terminated as an ASD pursuant to a vertical conspiracy between Defendants Briggs & Stratton, and Spencer Engine pursuant to an unlawful exclusive territorial distribution scheme in violation of Sherman Act Section 1.

> (3) Spencer Engine has acquired monopoly power over the sale and distribution of small gasoline powered engines, parts and accessories in Peninsular Florida and the Orlando metropolitan area by entering into exclusive Central Service Distributorship agreements with manufacturers of such products controlling over eighty five percent (85%) of the market of such in violation of Sherman Act Section 2. Spencer has unlawfully used its monopoly power to deprive Anderson Engines of its supplies of such engines, parts and accessories by terminating Anderson as an ASD for such products.

### 1. *The Horizontal Refusal to Deal.*

In support of the motion for summary judgment the defendants assert that there is no evidence of any agreement among the manufacturers to refuse to deal with the plaintiff, except the evidence supplied by Mr. Anderson that each manufacturer has been asked and none has expressed a willingness to deal directly with the plaintiff. The question is whether or not the circumstantial evidence that the manufacturers are unwilling to deal with plaintiff is adequate to raise a factual issue as to the existence of a conspiracy in the face of the sworn denial by the defendants of any agreement related to the refusal to deal. The Fifth Circuit has held that "[w]hen faced with defendants' sworn denial of the existence of a conspiracy, it is incumbent upon the plaintiff to produce significant probative evidence demonstrating that a genuine issue of fact exists as to this element of the complaint." *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 554 (5th Cir. 1980).

Defendants have denied the existence of a conspiracy. Mr. Spencer's affidavit says that the termination was effected by Spencer acting alone and without request or suggestion from either Briggs & Stratton or any other manufacturer whom Spencer represents. See paragraphs 20, 21, 26 of E. W. Spencer II affidavit. The affidavit of C. Joseph Cook, a district service manager with Briggs & Stratton, also negates the allegation of a conspiracy between Briggs & Stratton and Spencer. Mr. Cook states in his affidavit the following:

> 40. Around June 1, 1979, I learned that Spencer Engine & Magneto, Inc., had appointed Rev-Cut Mower Service as ASD in the Orlando area to replace Anderson Engines, Inc.

> 41. I never suggested, requested, directed, or advised Spencer Engine & Magneto, Inc., to terminate Anderson Engines, Inc., as an ASD of Briggs & Stratton Corporation products.

> 42. I did not learn of the termination of Anderson Engines, Inc., as an ASD of

**1160**

Briggs & Stratton Corporation products by Spencer Engine & Magneto, Inc., until after May 11, 1979.

43. I never suggested, requested, directed, or advised Spencer Engine & Magneto, Inc., to appoint Rev-Cut Mower Service as ASD in the Orlando area to replace Anderson Engines, Inc.

44. I did not learn of the appointment of Rev-Cut Mower Service as replacement ASD in the Orlando area until after May 11, 1979.

45. I have never suggested, requested, or demanded or instructed any other employee of Briggs & Stratton Corporation to suggest, request or demand, or ever heard that any other employee of Briggs & Stratton Corporation has suggested, requested or demanded that any supplier of small engines and replacement parts not sell such products to Anderson Engines, Inc., or sell such products to Anderson Enginers, Inc., only on certain terms or at certain prices.

The affidavit filed by Howard Anderson in opposition to the motion for summary judgment states that no central service distributor such as Spencer is willing to sell the needed engines and parts to him on a "regular and competitive pricing basis." Mr. Anderson states that after he was terminated by Spencer, his company has diversified into new lines of equipment sales. Mr. Anderson also states in his affidavit that ninety percent of the small gasoline engines and parts sold in Peninsular Florida are sold through Spencer.

Other evidence as to which there is no dispute demonstrates that at no time prior to 10 May 1979 did the defendant manufacturer sell directly to plaintiff (pretrial stipulation, part VI ¶ 18), and that it is the practice of defendant Briggs & Stratton to distribute its products to wholesalers such as the plaintiff only through central service distributors such as Spencer. This practice is followed by defendant Briggs & Stratton on a nationwide basis. See Stratton deposition, page 7, line 16 through page

8, line 3. Although it is clear that after 10 May 1979 none of the manufacturers elected to deal directly with the plaintiff, there is no evidence that such a refusal is contrary to their economic self-interest. On the contrary, the fact that none of the manufacturers ever dealt directly with the plaintiff, and the fact that on a nationwide basis Briggs & Stratton deals with wholesalers only through regional distributors show that the refusal to deal directly with the plaintiff after his termination by Spencer was a bona fide business practice of the manufacturers. It follows that the plaintiff's circumstantial evidence, relying as it does on a theory of conscious parallelism, is inadequate to raise a genuine issue of material fact as to the conspiracy element. See *Pan-Islamic Trade Corp. v. Exxon Corp.,* supra at 559.

The lack of evidence of a conspiracy among the manufacturers is sufficient to eliminate both of plaintiff's claims under Section 1 of the Sherman Act. Even if it should be assumed, however, that the manufacturers jointly agreed among themselves not to deal with the plaintiff, such a refusal to deal would be per se illegal only if: (a) the conspiracy was a horizontal conspiracy among traders at the same level of distribution to eliminate a direct competitor; (b) the conspiracy was a vertical conspiracy among traders at different marketing levels designed to exclude a direct competitor of some members; or (c) the conspiracy was designed to influence trade practices of, but not to eliminate, a victim. See *E. A. McQuade Tours, Inc. v. Consolidated Air Tour Manual Committee,* 467 F.2d 178 (5th Cir. 1972), *cert. denied,* 409 U.S. 1109, 93 S.Ct. 912, 34 L.Ed.2d 690 (1973). None of these situations is present here. As shown by the unrebutted testimony of E. W. Spencer and by his affidavit, the change of dealers was not to impose or enforce anticompetitive restrictions on the plaintiff or any other entity. Nor is there any allegation or argument by the plaintiff that the object of the refusal to deal was to injure a competitor of any of the alleged conspirators.[1] The defendants' refusal to deal,

1. The court has not overlooked paragraph 26 of Mr. Anderson's affidavit wherein he states:

"On occasion, Spencer sold engines and parts

therefore, would be unlawful only if its object or effect was unreasonably anticompetitive. *See E. A. McQuade Tours, Inc.,* supra at 186; *Joe Regueira, Inc. v. American Distilling Co.,* 642 F.2d 826, 831–32 (5th Cir. 1981); *Blackburn v. Crum & Forster,* 611 F.2d 102 (5th Cir. 1980), *cert. denied,* 447 U.S. 906, 100 S.Ct. 2989, 64 L.Ed.2d 856 (1980).

■■■■ Whether the complaint in this case is viewed as asserting a collective refusal to deal by the manufacturers as suggested in plaintiff's first theory of liability or a narrower conspiracy by Spencer and Briggs & Stratton, the defendants in support of their motion for summary judgment have adequately shown that the refusal to deal by the defendants was neither for anticompetitive purposes nor created an anticompetitive effect. The burden of rebutting this showing has not been met by the plaintiff. Mr. Anderson's affidavit shows that the ability of the plaintiff to compete in the sale of small engines and replacement parts has been adversely affected by the termination of its supply through Spencer; however, this is not sufficient to show an adverse effect on competition in any relevant market. As pointed out in *Northwest Power Products, Inc. v. Omark,* 576 F.2d 83, 88 (5th Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979), the antitrust laws are designed to protect competition and not competitors.

### 2. *Vertical Conspiracy.*

■■■■ Under the plaintiff's second theory of liability, its brief suggests that the plaintiff's termination was "pursuant to a vertical conspiracy between defendants Briggs & Stratton and Spencer Engine pursuant to an unlawful exclusive territorial distribution scheme in violation of Sherman Act Section 1." Nowhere in the complaint is it alleged that such was the object of the alleged conspiracy. In view of the fact that this theory does not fall within the scope of the complaint, it cannot be asserted at this

juncture. Nevertheless, the purpose of the plaintiff's termination, as previously mentioned, is explicated in the affidavit and deposition of E. W. Spencer. Such has not been refuted by the plaintiff. Additionally, the plaintiff's own deposition testimony to the effect that before his termination he did not sell outside of his four county area of responsibility negates the belated assertion that the termination was related to a territorial distribution scheme. See Mr. Anderson's deposition of 30 March 1981 at 10–12. See also Mr. Anderson's deposition of 2 March 1981 at 9, 10. Furthermore, the vertical imposition of territorial restraints is not a per se violation of Section 1. It must be analyzed under the rule of reason upon the showing of anticompetitive effects. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 59, 97 S.Ct. 2549, 2562, 53 L.Ed.2d 568 (1977). Consequently, even if the plaintiff's second theory of liability may be suggested despite the pleadings, it is subject to the same deficiencies as the first. Because of the plaintiff's failure to rebut the showing made by the defendants with respect to the purpose and the lack of anticompetitive effects of the refusal to deal and the absence of conspiracy, the defendants are entitled to a summary judgment on the claims under Section 1 of the Sherman Act.

### 3. *Monopolization.*

■■■■ The plaintiff's final theory is that defendant Spencer is a monopolist within the Central Florida area and its refusal to deal constitutes a violation of Section 2 of the Sherman Act. If it is assumed for purposes of the motion that Spencer is a monopolist in Central Florida with respect to small gasoline powered engines and replacement parts, it does not necessarily follow that its refusal to deal with the plaintiff is a violation of Section 2. In *Mid-Texas Communications Systems, Inc. v. American Telephone & Telegraph Co.,* 615 F.2d

---

to retail businesses in Central Florida in competition with my company." This statement standing as a bare conclusion without any predicate as to the basis for the assertion does not conform to Rule 56(e) and does not gener-

ate an issue of fact as to the existence of same-level competition between the plaintiff and defendant Spencer. Furthermore, any such issue would be outside the pleadings.

**1162**

1372, 1389 (5th Cir. 1980), *cert. denied*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980), the court pointed out that even a monopolist may refuse to deal if its refusal is not unreasonably anticompetitive:

> Thus, as a general principle, section 2 prohibits only those refusals to deal which under the particular circumstances of a case are unreasonably anticompetitive.

In the case of *Byars v. Bluff City News Co.*, 609 F.2d 843 (6th Cir. 1979), the court identified four situations in which refusals to deal by monopolists have been considered unlawful per se. They involve (1) the use of monopoly power in one market to discourage competition in another; (2) the use of monopoly power to prevent one's customers from dealing with a rival; (3) the use of monopoly power over an indispensible facility such as a port or large market building to deny the use of the indispensible facility to competitors, and (4) the use of monopoly power at one level of the economy to facilitate vertical integration at another. None of these factual situations is alleged in the complaint. Hence, even if Spencer is a monopolist, the plaintiff faces the same problem in connection with the monopoly claim that it did with respect to its Section 1 claims. In other words, an element of the claim is an unreasonably anticompetitive effect. As pointed out above, the affidavits and the pre-trial stipulation taken together with the deposition testimony indicate that the plaintiff has simply been replaced by Rev-Cut as a distributor for Spencer. The plaintiff has not brought forth any evidence to demonstrate that this change of relationship has adversely affected competition in any relevant market. On the contrary, the fact that the plaintiff has remained in business and serves not only its original geographic area, but now serves a somewhat larger area, may indicate that competition has been enhanced. There can be no doubt that the termination of the relationship between Spencer and the plaintiff has had a detrimental effect on the plaintiff. This is clearly established by the affidavit of Mr. Anderson. However, injury to a competitor by itself is inadequate to succeed in an antitrust action.

For the foregoing reasons, the motion for summary judgment will be granted.